Argued and submitted July 22, reversed and remanded December 10, 2003

In the Matter of the Compensation of
James R. Clevenger, Claimant.

CONCRETE CUTTING CO.,
*Petitioner,*

*v.*

James R. CLEVENGER,
*Respondent.*

01-08644, 01-08647; A119486

81 P3d 723

Bruce Byerly argued the cause for petitioner. On the brief were Deborah L. Sather, Tracy J. White, and Sather, Byerly & Holloway.

George J. Wall argued the cause for respondent. On the brief were Jacqueline M. Jacobson and Welch, Bruun & Green.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Schuman, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Kistler, J., resigned.

## EDMONDS, P. J.

In this workers' compensation case, employer seeks review of an order of the Workers' Compensation Board (the board) affirming an order of the administrative law judge (ALJ). The issue on review concerns how temporary disability benefits are to be calculated under OAR 436-060-0025.[1] Reviewing for errors of law, ORS 183.482(8)(a), we reverse and remand.

The salient facts of the case are uncontested. Claimant, a concrete cutter, was hired by employer in 1986, at which time claimant was not a union member. In 1993, employer signed a union contract covering its concrete cutters, and claimant, accordingly, became a member of Laborers' Union Local 335. The local operates a call board through which unemployed union members may place their names on a list for referral on a rotating basis to potential employers. Claimant, however, has never personally used the call board service. He continued to work for employer up to the time of his work-related injury in March 2000. As a

---

[1] OAR 436-060-0025 provides, in relevant part:

"(1) The rate of compensation shall be based on the wage of the worker at the time of injury * * *.

"* * * * *

"(3) The rate of compensation for regularly employed workers shall be computed as outlined in ORS 656.210 and this rule. As used in this rule, 'regularly employed' means actual employment or availability for such employment.

"* * * * *

"(b) For workers employed through union hall call board insurers shall compute the rate of compensation on the basis of a five-day work week at 40 hours a week, regardless of the number of days actually worked per week.

"* * * * *

"(5) The rate of compensation for workers regularly employed, but paid on other than a daily or weekly basis, or employed with unscheduled, irregular or no earnings shall be computed on the wages determined by this rule. The insurer shall resolve disputes regarding wage calculations by contacting the employer and worker to determine a reasonable wage. If an agreement cannot be reached, the dispute may be referred to the division for resolution.

"(a) For workers employed seasonally, on call, paid hourly, paid by piece work or with varying hours, shifts or wages:

"(A) Insurers shall use the worker's average weekly earnings with the employer at injury for the 52 weeks prior to the date of injury. * * *"

result of his injury, claimant received temporary disability benefits that employer calculated by multiplying his hourly wage rate by 40 hours per week.

Thereafter, employer realized that claimant's actual work hours had not consistently amounted to 40 hours per week during the months preceding his injury, and employer, accordingly, recalculated the temporary disability payments on the basis of an average of the wages received by claimant during the 12 weeks immediately before his injury. Based on those calculations, employer determined that there had been an overpayment of $12,017 in temporary disability benefits. Employer notified claimant that it would offset the overpayment against a permanent disability award on another work-related claim and that it would deduct the remainder of the overpayment from future benefits accruing on the March 2000 claim.

In arguments at hearing, claimant challenged the determination that there had been an overpayment. He asserted that he was "employed through union hall call board" for the purposes of OAR 436-060-0025(3)(b). That rule provides:

> "For workers *employed through union hall call board* insurers shall compute the rate of compensation on the basis of a five-day work week at 40 hours a week, regardless of the number of days actually worked per week."

(Emphasis added.) Claimant maintained that, pursuant to the rule, his wages should be computed on the basis of a 40 hour work week, regardless of the number of days or hours he actually worked per week. The board agreed with claimant's argument. On review, employer assigns as error the board's determination that claimant's wage at the time of injury is to be calculated under the "union hall call board" formula of OAR 436-060-0025(3)(b).

Employer argues that the computation of time loss benefits for claimant should be based only on the replacement of his actual wages at the time of injury rather than on an artificial basis as a worker employed through the union hall call board. Employer points to the fact that claimant did not actually *obtain* his employment by use of the call board

process and that his employment continued in its original status up to the time of his injury. Employer stresses the fact that claimant has never used a union call board in his employment relationship with employer. Alternatively, employer argues that the call board provision was not intended to be applied to workers, like claimant, who are "regularly employed."

In contrast to employer's position, claimant interprets the phrase "employed through" to refer to the underlying conditions of the employment relationship. In particular, he points out that employer is obligated by its collective bargaining contract to hire its concrete workers from the union hall call list. Even though claimant was not originally hired pursuant to the collective bargaining agreement and the call list, he believes the controlling fact is that his employment relationship at the time of injury was defined by the collective bargaining agreement. Thus, it follows, according to claimant, that OAR 436-060-0025(3)(b) governs the determination of his temporary time loss.

■ In construing an administrative rule, we apply the same analytical framework made applicable to the construction of statutes by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). *Alanis v. Barrett Business Services*, 179 Or App 79, 82, 39 P3d 880 (2002). Our first obligation is to examine the rule's text, along with its context, which includes other provisions of the same rule, other related rules, and other related statutes, to ascertain the intent underlying the rule.

Both employer and claimant offer plausible textual interpretations of the phrase "employed through union hall call board." Participial adjective phrases such as the one at issue here are, by nature, temporally ambiguous.[2] The words "employed through" could mean "obtained employment by means of," or they could mean "subject to employment through." As we cannot choose between the two proffered constructions on the basis of text and grammatical rules, we turn next to the context of OAR 436-060-0025.

_____

[2] *See generally* Randolph Quirk et al., *A Comprehensive Grammar of the English Language* 1264-65 (1989) ("postmodification by -ed participle clauses").

■     OAR 436-060-0025 was enacted pursuant to ORS 656.210,[3] which governs temporary total disability payments. Subparagraph (2)(d)(A) of that statute provides that the "benefits of a worker who incurs an injury shall be based on the wages of the worker *at the time of injury.*" (Emphasis added.) OAR 436-060-0025(1) likewise provides that, with certain exceptions, "[t]he rate of compensation [for temporary disability] shall be based on the wage of the worker *at the time of injury.*" (Emphasis added.) Based on the statute's direction, we conclude that the underlying purpose of OAR 436-060-0025 is to determine or approximate, to the extent possible, the worker's wage at the time of injury based on existing employment circumstances.

In examining the context for OAR 436-060-0025(3), we also look at the entirety of OAR 436-060-0025, the rule of which it is a part. As we have said, subsection (1) of that rule sets out a general principle that will control in the absence of recognized exceptional circumstances. For workers whose benefits are governed solely by subsection (1), the wage in question on which time loss is calculated is the actual, regular contractual wage. Subsection (2) of the rule pertains to self-insured employees and is not applicable here. Paragraph (3)(b), as already noted, applies to "regularly employed" workers who are "employed through union hall call board." To satisfy the definition of "regularly employed," workers may be either "actually employed" or *available* for employment. OAR 436-060-0025(3); *see also* ORS 656.210(2)(e). In substance, paragraph (3)(b) operates to create an exception to subsection (1) of the rule. The time loss of a call board worker is computed on the basis of a five-day work week at 40 hours per week, regardless of the actual hours worked. In that sense, consistently with the definition of "regularly employed," paragraph (3)(b) treats such a worker as if the worker were employed full-time at the time of injury. Finally, subsection (5) of the rule sets out formulae for computing the rate of compensation for workers who are "regularly

---

[3] ORS 656.210(2)(e) provides, in pertinent part:

"For workers not regularly employed and for workers with no remuneration or whose remuneration is not based solely upon daily or weekly wages, the Director of the Department of Consumer and Business Services, by rule, may prescribe methods for establishing the worker's weekly wage."

employed" but who, nevertheless, are "paid on other than a daily or weekly basis, or employed with unscheduled, irregular or no earnings." In cases where subsection (5) applies, the rule requires that insurers compute the worker's wage on the basis of "the worker's average weekly earnings with the employer at injury for the 52 weeks prior to the date of injury." OAR 436-060-0025(5)(a)(A).[4]

■ The facts of this case are that claimant's earnings and hours were irregular, varying from under 10 hours per week (during winter months) to over 40 (during summer months). It is clear from the record that claimant was "regularly employed" as defined by statute and rule. He was both "actually employed" and "available" for employment.

Based on those facts, we hold that subsection (5) is the governing section in light of the language and the structure of the rule as a whole. Of the several regimes created by OAR 436-060-0025, subsection (5) appears more applicable to "regularly employed" workers with irregular earnings who have not obtained their employment through a call board than does paragraph (3)(b). The disability wages for "regularly employed" workers with *regular* earnings who have *not* obtained their employment through a union hall call board will typically be governed by subsection (1) of the rule, and the wages for "regularly employed" workers with irregular earnings who *did* obtain their employment through a union call board will typically be governed by paragraph (3)(b). We therefore remand to the board to determine whether employer correctly computed claimant's compensation according to the terms of OAR 436-060-0025(5) and to grant appropriate relief to the parties based upon that determination.[5]

Reversed and remanded.

---

[4] Subsection (5) also sets forth variations of this formula to be applied to a number of defined situations (*i.e.*, where there has been a change in the wage earning agreement during the 52-week period, OAR 436-060-0025(5)(a)(B)(ii)).

[5] As a result of our dispositions, we do not reach the remainder of employer's arguments; to the extent that those arguments remain viable, the board will have to address them in light of its computation of time loss on remand.